# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**THE ESTATE OF EVA BOLES**                                                           **PLAINTIFF**

**V.**                                                       **CIVIL ACTION NO: 4:07-CV-99-SA-DAS**

**NATIONAL HERITAGE REALTY, INC., et al.**                                           **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court is Defendants' objection to the Magistrate Judge's decision granting Plaintiff's Motion to Compel [97]. For the reasons stated below, the Court affirms the Magistrate Judge's decision.

## I. BACKGROUND

This is a wrongful death and survival action by the Estate of Eva Boles against various entities that were responsible for the operation of the facility in which Boles resided for approximately four and a half years prior to her death. The Estate alleges negligence, gross negligence, medical malpractice, fraud, and breach of fiduciary duty. The action has been brought by Eliza Price, the administratrix of the Estate of Eva Boles and cousin of Eva Boles.[1]

On February 9, 2010, Plaintiff filed its Motion to Compel [64], seeking full responses to its Requests for Production of Documents. Plaintiff requested production of Mariner Health Care's general ledgers for the years 2004 to present. Defendants objected to production of the general ledgers on the grounds that the information sought contains proprietary and confidential information,

---

[1]Extensive accounts of this matter's procedural history can be found in the Court's prior decisions. See Estate of Eva Boles v. Nat'l Heritage Realty, Inc., 2009 U.S. Dist. LEXIS 55825 (N.D. Miss. June 23, 2009) (opinion on motion for reconsideration); Estate of Eva Boles v. Nat'l Heritage Realty, Inc., 2009 U.S. Dist. LEXIS 19690 (N.D. Miss. Mar. 11, 2009) (opinion on motion to dismiss).

and that production would be unduly burdensome, oppressive, and cost-prohibitive. Defendants further objected on the grounds that the request exceeded the scope of permissible discovery, sought irrelevant information, and was not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also sought Defendants' tax returns for the years 2004 to present. Defendants objected to production of the tax returns on the grounds that the request exceeded the scope of permissible discovery, sought irrelevant information, was not reasonably calculated to lead to the discovery of admissible evidence, and sought confidential and proprietary information.

On February 26, 2010, the Court entered a Confidentiality Stipulation and Protective Order [78], in which the parties stipulated that confidential information may be used only for purposes of this litigation; that any and all copies of confidential documents, including the originals and any items containing confidential information, shall be either destroyed or returned to opposing counsel at the conclusion of this matter; and that the obligations imposed by the Protective Order and Confidentiality Agreement shall continue beyond the termination of this matter. Each party and their counsel agreed to the continuing jurisdiction of the Court for the enforcement of the confidentiality agreement.

On March 23, 2010, the Magistrate Judge held a hearing on the Motion to Compel [64] and other pending motions. Plaintiff argued that it should be permitted to examine the requested documents and form its own evaluation of Defendants' net worth and financial condition, rather than depend on financial statements supplied by Defendants. Plaintiff maintained that it should not be forced to rely on Defendants' representations, in light of a series of financial transactions and corporate restructuring that drastically reduced Defendants' net worth over a short period of time, inconsistent testimony from Defendants' former Chief Financial Officer as to Defendants' net worth,

2

and allegations of fraud levied against Defendants in other litigation.

Defendants responded that production of the requested documents would be extremely burdensome in terms of cost and manpower, and that Mississippi federal courts have heretofore not allowed discovery to such a degree. Defendants further argued that the information sought was of little evidentiary value, insofar as net worth and financial condition at the time of judgment, rather than during the several years leading up to judgment, were relevant to assessment of punitive damage awards. Finally, Defendants argued that the information sought was irrelevant, insofar as Plaintiff's allegations did not support a claim for punitive damages.

After hearing the parties' arguments, the Magistrate Judge granted Plaintiff's Motion to Compel in whole, requiring production of the requested financial documents. The Magistrate Judge observed that while punitive damage awards were evaluated by reference to the net worth and financial condition of a defendant at the time of judgment, Plaintiff should nonetheless be allowed to examine financial records from 2004 to present in order to gain an accurate understanding of Defendants' present financial condition, particularly in light of the prior inconsistent testimony by Defendants' former Chief Financial Officer. The Magistrate Judge further observed that Plaintiff had agreed to pay Defendants' reasonable costs and expenses of production, that Defendants' confidentiality concerns could be addressed by a protective order, and that Defendants had failed to offer any alternative which allowed Plaintiff to examine Defendants' financial condition over the same period of time. Finally, the Magistrate Judge held that Plaintiff's factual allegations were sufficient to make out a cognizable claim for punitive damages.

On March 29, 2010, the Magistrate Judge granted Plaintiff's Motion to Compel and ordered that Plaintiff shall bear all reasonable costs and expenses incurred by Defendants in producing the

requested documents, and that the parties shall confer and submit a proposed agreed protective order. Defendants filed their objection to the Magistrate Judge's decision on April 8, 2010, which the Court now considers.

## II. STANDARD OF REVIEW

Pursuant to the authority granted it by Congress, the Court has designated magistrate judges to hear and determine non-dispositive discovery matters. 28 U.S.C. § 636(b)(1)(A); L.U.Civ.R. 72(d). "No ruling of a magistrate judge in any matter which he or she is empowered to hear and determine will be reversed, vacated, or modified on appeal unless the district judge determines that the magistrate judge's findings of fact are clearly erroneous, or that the magistrate judge's ruling is clearly erroneous or contrary to law." L.U.Civ.R. 72(a)(1)(B); see also FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A); O'Neal v. Cazes, 257 Fed. Appx. 710, 717 (5th Cir. 2007); Castillo v. Frank, 70 F.3d 382, 385 (5th Cir. 1995).

"When reviewing a non-dispositive order issued by a Magistrate Judge . . . this court gives substantial deference to the findings of the Magistrate Judge." Grand Oaks, Inc. v. Anderson, 1997 U.S. Dist. LEXIS 14864, *2-*3, 175 F.R.D. 247 (N.D. Miss. Sep. 12, 1997) (citing FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A); Castillo, 70 F.3d at 385). Indeed, the "'clearly erroneous' standard requires that the court affirm the decision of the magistrate judge unless 'on the entire evidence the court is left with a definite and firm conviction that a mistake has been committed.'" C.H. v. Rankin County Sch. Dist., 2010 U.S. Dist. LEXIS 37888, *19 (S.D. Miss. Apr. 16, 2010) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

## III. DISCUSSION

Each of Defendants' objections to the Magistrate Judge's decision may be classified within

4

one or more of three broad categories: arguments related to the relevance of the information sought by Plaintiffs, arguments related to the burden of production, and arguments related to the potential prejudice to Defendants.

## A.   *Relevance*

Defendants first argue that the general ledger is irrelevant to the issue of punitive damages, insofar as the information contained therein is not probative of Defendants' net worth at the time of trial.

"In all cases involving an award of punitive damages, the fact finder, in determining the amount of punitive damages, shall consider, to the extent relevant . . . the defendant's financial condition and net worth. . . ." MISS. CODE. ANN. § 11-1-65(1)(e). Further, "[i]n determining whether the award is excessive, the court shall take into consideration . . . [t]he financial condition and net worth of the defendant. . . ." MISS. CODE ANN. § 11-1-65(1)(f)(ii). Finally, Mississippi imposes limits on punitive damages based on the net worth of the defendant as determined "in accordance with Generally Accepted Accounting Principles." MISS. CODE ANN. § 11-1-65(3). The Mississippi Supreme Court has clarified that when a court assesses a jury's punitive damages award, the court should utilize the defendant's net worth and financial condition at the time of judgment. Franklin Corp. v. Tedford, 18 So. 3d 215, 242 (Miss. 2009) (citing Paracelsus Health Care Corp. v. Willard, 754 So. 2d 437, 445 (Miss. 1999); Cash v. Beltmann North Am. Co., 900 F.2d 109, 111 n. 3 (7th Cir. 1990)). While evidence of net worth is not a prerequisite to an award of punitive damages, a party may not challenge an award as being excessive or insufficient on the basis of net worth if such evidence was not presented at trial. C & C Trucking Co. v. Smith, 612 So. 2d 1092, 1105-06 (Miss. 1992).

This Court has previously allowed discovery of financial records from as far back as six years before trial. Smith v. Schmidt & McGarland Firm, 2008 WL 1716646, *1 (N.D. Miss. Apr. 9, 2008) (in case where trial was scheduled for August, 2008, Court compelled production of profit and loss statements, balance sheets, financial statements showing net worth, and federal income tax 1040 forms for the years 2002 to present); see also EEOC v. HWCC-Tunica, Inc., 2008 U.S. Dist. LEXIS 85830, *20 (N.D. Miss. Oct. 6, 2008) (in case where trial was scheduled for April, 2009, Court compelled production of financial statements, balance sheets, and profit and loss statements from December, 2005, to present). Defendants correctly note, though, that the federal courts of this state have also only required a defendant to submit a sworn net worth statement. See Liberty Mutual Ins. Co. v. Tedford, 2008 U.S. Dist. LEXIS 108282, *21 (N.D. Miss. May 12, 2008) (Court ordered defendant to provide a net worth statement to plaintiff); Price v. Lockheed Martin Corp., 2006 WL 1686568, *3 (S.D. Miss. June 19, 2006) (Court ordered defendant to bring to trial a sworn financial statement outlining assets, liabilities, and net worth). However, in light of the Court's previous decisions allowing discovery of financial documents from years preceding trial, the Court can not find that the Magistrate Judge's rejection of Defendants' "net worth at the time of trial" argument was clearly erroneous or contrary to law.[2]

Defendants also argue that the general ledger is irrelevant because punitive damages are not warranted in this case. Plaintiff alleges, among other things, that Defendants failed to provide Eva

---

[2] See also Bessier v. Precise Tool & Eng. Co., Inc., 778 F. Supp. 1509, 1514 (W.D. Mo. 1991) (for purposes of determining financial condition of defendant for punitive damages claim, court compelled production of financial statements for preceding three years; income tax returns for 1987, 1988, and 1989; documents reflecting gross income, net income, and expenditures from January 1, 1985, through present; bank statements and deposit records from January 1, 1985, through present; and general ledgers from January 1, 1985, through present).

Boles with sufficient food and water; failed to bathe her daily or after episodes of incontinence; failed to provide hygiene and sanitary care sufficient to prevent infections; failed to provide clean bed linens; failed to periodically reposition Boles so as to prevent the formation of pressure sores; failed to provide adequate supervision to prevent her from falling; and failed to administer proper medication and wound care. Plaintiff further alleges that as a result of the above failures, Boles suffered, among other things, injuries from falls, dehydration, malnutrition, weight loss, urinary tract infections, urosepsis, bone fractures, fecal impactions, pressure sores, burns, extreme pain, and death.

This Court has recognized that "a conclusory demand for punitive damages is normally insufficient to require disclosure of sensitive financial data." Smith, 2008 WL 1716646 at *1. In order to send the issue of punitive damages to a jury, this Court will have to determine whether, based on the "totality of the circumstances, . . . a reasonable, hypothetical trier of fact could find either malice or gross neglect and reckless disregard." Mariner Health Care, Inc. v. Estate of Edwards, 964 So. 2d 1138, 1148 (Miss. 2007). Plaintiff has alleged sufficient facts to "demonstrate . . . a real possibility that punitive damages will be an issue." Smith, 2008 WL 1716646 at *1 (quoting Chenoweth v. Schaaf, 98 F.R.D. 587, 589 (W.D. Pa. 1983)). The detailed factual allegations of the Complaint are sufficient to allow discovery of financial information relevant to the issue of punitive damages. Accordingly, the Magistrate Judge's decision that the Plaintiff had alleged sufficient facts to conduct such discovery was not clearly erroneous or contrary to law.

**B.     Burden**

The general ledger sought by Plaintiff contains every transaction or a summary of every transaction conducted on a daily basis from January 1, 2004, to the present. Defendants allege that

7

the general ledger will consist of over 400,000 pages, and that the printing and copying cost to Defendants will exceed $30,000.00. Defendants further allege that their financial expert will require additional staff to review the report of Plaintiff's financial expert and prepare a response thereto - a process which Defendants anticipate will at least cost tens of thousands of dollars. Finally, Defendants allege that their counsel will be required to retain additional employees to analyze and redact the document.

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, Rule 26(b) provides:

> [T]he court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2)(C). Defendants' net worth and financial condition are relevant to this matter, insofar as Plaintiff has brought a claim for punitive damages and alleged sufficient facts in support thereof. See MISS. CODE. ANN. § 11-1-65(1)(e), (f)(ii); Smith, 2008 WL 1716646 at *1.

Plaintiff agreed to pay the reasonable costs of production. Indeed, the Magistrate Judge ordered that Plaintiff shall bear all reasonable costs and expenses incurred by Defendants in producing the information. Defendants have not offered any evidence or argument as to how this provision of the Magistrate Judge's order is insufficient to alleviate the burden of production. Accordingly, the Magistrate Judge's order was not clearly erroneous or contrary to law on the basis of the burden imposed by production. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358,

98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (district courts have discretion to protect responding party from undue burden or expense by conditioning discovery on the requesting party's payment of the costs of discovery).

## C. *Prejudice*

Defendants argue that the general ledger contains information regarding private and confidential amounts paid to settle lawsuits, most of which are subject to confidentiality agreements. Defendants also argue that the general ledger would reveal how much Defendants pay their counsel. Further, Defendants contend that if the information contained in the general ledger is disseminated, their competitors will gain confidential and proprietary knowledge of its operations. Finally, Defendants maintain that vendors will gain knowledge of how Defendants negotiate and conduct business with other vendors.

Defendants rely heavily on the United States District Court for the Southern District of Mississippi's decision in Price v. Lockheed Martin Corporation, 2006 WL 1686568 (S.D. Miss. June 19, 2006). In Price, the Court held, ". . . by simply inserting a claim for punitive damages in a pleading, a plaintiff should not be able to have *carte blanche* access to the private financial life of a defendant." Id. at *3. Therefore, the Court held that the proper balance between a plaintiff's entitlement to an "adequate opportunity to prove a legitimate punitive damage claim" and a defendant's privacy was "struck by requiring the [defendant] to bring to trial a sworn financial statement, fairly outlining, under penalty of perjury, the Defendant's assets, liabilities, and net worth." Id.; see also Liberty Mutual Ins. Co., 2008 U.S. Dist. LEXIS 108282 at *21.

The Court is not persuaded by the above arguments. As noted above, the Court entered a Confidentiality Stipulation and Protective Order [78], in which the parties stipulated that

9

confidential information may be used only for purposes of this litigation; that any and all copies of confidential documents, including the originals or any items containing confidential information, shall be either destroyed or returned to opposing counsel at the conclusion of this matter; and that the obligations imposed by the Protective Order and Confidentiality Agreement shall continue beyond the termination of this matter.  Each party and their counsel agreed to the continuing jurisdiction of the Court for the enforcement of the confidentiality agreement.  Additionally, the Magistrate Judge ordered - in the order which is the subject of this appeal - that the parties shall confer and submit a proposed agreed protective order that is not inconsistent with the Court's ruling or the rules of this Court.  Finally, although the Court expresses no opinion as to the extent to which it may be permissible for Defendants to redact the documents sought by Plaintiff, the Court is aware that parties to litigation routinely redact privileged and confidential information contained in discovery responses.

Defendants argue, however, that even the above-cited precautions would be insufficient to protect the confidential information contained in the documents sought by Plaintiff.  They argue that they would be greatly prejudiced if Plaintiff's counsel were allowed access to the information in the general ledger, and that no confidentiality agreement would be sufficient to alleviate such prejudice in that Plaintiff's counsel would still possess the knowledge gained from examination of the ledger and would use it to gain some advantage in future litigation.

In prior cases involving discovery disputes, this Court has compelled production of documents while also imposing substantial confidentiality requirements upon counsel of the party seeking production.  See Liberty Mutual Ins. Co. v. Tedford, 2008 U.S. Dist. LEXIS 108282 at *21 (Court ordered production of financial statement but ordered that opposing counsel was prohibited

from revealing the contents thereof to any person, including opposing party, and that the information was to be treated as strictly confidential until such time as it was introduced into evidence at trial); EEOC, 2008 U.S. Dist. LEXIS 85830 at *21-*22 ("... only attorneys in the present case may view the information, and counsel is ordered to treat the information as strictly confidential until such time as it is received into evidence at trial."); Smith, 2008 WL 1716646 at *1 (plaintiff's counsel was prohibited from revealing the contents of documents to any other person, including plaintiffs, and instructed to treat the information as strictly confidential until such time as it may be offered into evidence at trial).[3] Defendants have offered no evidence or argument as to why similar protective measures would be insufficient to cure any alleged prejudice in this case.[4]

In light of the Magistrate Judge's explicit instruction for the parties to submit a proposed protective order, and this Court's previous decisions allowing discovery of confidential information under certain restrictions, the Court finds that the Magistrate Judge's decision was not clearly

---

[3]See also Audiotext Comms. Network, Inc. v. US Telecom, Inc., 1995 U.S. Dist. LEXIS 15416, *32 (D. Kan. Oct. 5, 1995) (where court had previously entered a protective order as to all information obtained through discovery, plaintiff's confidentiality concerns were alleviated).

[4]Defendants briefly argue that they believe Plaintiff will not abide by a protective order, citing Plaintiff's filing of certain documents without a seal in violation of procedure. In their briefing, Defendants only specify one pleading in which they contend Plaintiff wrongfully revealed confidential information - Plaintiff's response to Defendants' objection to the Magistrate Judge's decision. However, the Court notes that Defendants did not request that the Court seal the offending pleading. In contrast, Plaintiffs filed the rebuttal brief on their Motion to Compel on February 26, 2010 [79], and it contained similar confidential information. On April 12, 2010 - a month and a half later - Defendants' filed their Emergency Motion to Place Court Record Under Seal, requesting the Court seal the rebuttal [104]. The Court promptly granted the motion to seal on April 16, 2010 [106].
Although the Court is unaware of the particulars of any protective order that may eventually be proposed by the parties, the Court is confident that it will provide the Court with a means of addressing - and redressing - any violations thereof. Further, the Court is confident that it is capable of addressing any future concerns the parties may have concerning the filing of confidential and/or protected documents and exhibits without sealing them.

11

erroneous or contrary to law on the basis of the alleged prejudice to be caused by production of the documents.

## IV. CONCLUSION

This Court possesses "broad discretion in discovery matters." Bisby v. Garza, 342 Fed. Appx. 969, 973 (5th Cir. 2009) (citing Scott v. Monsanto Co., 868 F.2d 786, 793 (5th Cir. 1989)); see also Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982). The "rules of discovery are to be accorded a broad and liberal treatment." EEOC, 2008 U.S. Dist. LEXIS 85830 at *5 (citing Hickman v. Taylor, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). This Court can only reverse a Magistrate Judge's discovery-related decision if it is clearly erroneous or contrary to law. L.U.Civ.R. 72(a)(1)(B); FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A); O'Neal, 257 Fed. Appx. at 717; Castillo, 70 F.3d at 385. Defendants have not met this burden. For all the reasons stated above, the Court affirms the Magistrate Judge's decision granting Plaintiff's Motion to Compel [94]. A separate order consistent with this opinion shall issue on this the 20th day of May, 2010.

                                                    **/s/ Sharion Aycock**
                                                    **UNITED STATES DISTRICT JUDGE**