**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**THE ESTATE OF EVA BOLES**                                                  **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO. 4:07-CV-99-SA-DAS**

**NATIONAL HERITAGE REALTY, INC., et al.**                              **DEFENDANTS**

**MEMORANDUM OPINION**

For the reasons stated below, the Court denies Defendants' Emergency Motion for Reconsideration [178] and denies Defendants' Emergency Motion to Withdraw [179].

**I. BACKGROUND**

Plaintiff propounded its first Request for Production to Defendants on November 19, 2009 [46]. On February 9, 2010, Plaintiff filed its Motion to Compel [64], seeking production of certain financial records, including Defendants' general ledgers for the years 2004 to 2009. Thereafter, the parties entered a Confidentiality Stipulation and Protective Order [78], in which the parties stipulated that confidential information may be used only for purposes of this litigation; that any and all copies of confidential documents, including the originals and any items containing confidential information, shall be either destroyed or returned to opposing counsel at the conclusion of this matter; and that the obligations imposed therein shall continue beyond the termination of this matter. Each party and their counsel agreed to the continuing jurisdiction of the Court for the enforcement of the confidentiality agreement.

On March 29, 2010, the Magistrate Judge entered an order granting the Motion to Compel [94] and ordering the Defendants to produce the financial documents within the discovery period, which ended on April 9, 2010. The Magistrate Judge further ordered that Plaintiff would bear all reasonable costs and expenses incurred by Defendants in producing the requested documents, and

that the parties should confer and submit a proposed agreed protective order. Defendants objected to the Magistrate Judge's decision [97].

On May 20, 2010, the Court affirmed the Magistrate Judge's decision [129, 130]. See Estate of Boles v. Nat'l Heritage Realty, Inc., 2010 U.S. Dist. LEXIS 51604 (N.D. Miss. May 20, 2010). The Court held that the Magistrate Judge's decision was not clearly erroneous or contrary to law for the following reasons: 1) while Mississippi law requires that the fact finder determine financial condition and net worth at the time of trial, the Court has previously allowed the discovery of financial records from as much as six years before trial;[1] 2) Plaintiff had alleged sufficient facts to "demonstrate . . . a real possibility that punitive damages will be an issue;[2] 3) the Magistrate Judge had ordered that Plaintiff shall bear all reasonable costs and expenses incurred by Defendants in producing the documents, alleviating any purported burden;[3] and 4) the parties had entered a Protective Order and Confidentiality Agreement in which the parties and counsel not only agreed to substantial confidentiality requirements, but also agreed to this Court's continuing jurisdiction

---

[1] See Smith v. Schmidt & McGarland Firm, 2008 WL 1716646, *1 (N.D. Miss. Apr. 9, 2008) (court allowed discovery of financial records from six years before trial); EEOC v. HWCC-Tunica, Inc., 2008 U.S. Dist. LEXIS 85830, *20 (N.D. Miss. Oct. 6, 2008) (court allowed discovery of financial records from four years before trial); see also Bessier v. Precise Tool & Eng. Co., Inc., 778 F. Supp. 1509, 1514 (W.D. Mo. 1991) (court allowed discovery of general ledgers for six years preceding decision).

[2] See Mariner Health Care, Inc. v. Estate of Edwards, 964 So. 2d 1138, 1148 (Miss. 2007); Smith, 2008 WL 1716646 at *1 (quoting Chenoweth v. Schaaf, 98 F.R.D. 587, 589 (W.D. Pa. 1983)).

[3] See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358, 98 S. Ct. 2380, 57 L. Ed. 2d (1978) (district courts have discretion to protect responding party from undue burden or expense by conditioning discovery on the requesting party's payment of the costs of discovery).

to enforce the agreement.[4]

On May 26, 2010, the parties entered into an Amended Agreed Protective Order [133]. In general terms, the parties agreed that: 1) any and all copies of the financial documents would be either destroyed or returned to Defendants' counsel at the end of litigation; 2) the financial documents would only be used for purposes of this litigation; 3) within thirty days of the termination of this litigation, or sooner if ordered by the Court, all of the documents would be returned to Defendants' counsel; 4) all work product, including that of outside counsel or experts, that reflects or refers to the documents would either be destroyed or returned to Defendants' counsel; 5) if outside counsel or experts have any work product that contains confidential information and choose to destroy it, rather than return it to Defendants' counsel, Plaintiff's counsel shall observe said destruction and certify in writing to Defendants' counsel that the materials containing confidential information were destroyed; 6) the obligations of the Agreed Protective Order shall continue beyond the termination of this litigation; 7) the Court shall retain jurisdiction to enforce the terms of the agreement; 8) Defendants shall redact from the General Ledger all sums paid to settle claims that are subject to a confidentiality order or stipulation, and all sums paid to defense counsel; and 9)

---

[4] See Liberty Mutual Ins. Co. v. Tedford, 2008 U.S. Dist. LEXIS 108282, *21 (N.D. Miss. May 12, 2008) (court ordered production of financial statement but ordered that opposing counsel was prohibited from revealing the contents thereof to any person, including opposing party, and that information was to be treated as strictly confidential until such time as it was introduced into evidence at trial); EEOC, 2008 U.S. Dist. LEXIS 85830 at *21-*22 (". . . only attorneys in the present case may view the information, and counsel is ordered to treat the information as strictly confidential until such time as it is received into evidence at trial."); Smith, 2008 WL 1716646 at *1 (plaintiff's counsel was prohibited from revealing the contents of documents to any other person, including plaintiffs, and instructed to treat the information as strictly confidential until such time as it may be offered into evidence at trial); Audiotext Comms. Network, Inc. v. US Telecom, Inc., 1995 U.S. Dist. LEXIS 15416, *32 (D. Kan. Oct. 5, 1995) (where court had previously entered a protective order as to all information obtained through discovery, a party's confidentiality concerns were alleviated).

Plaintiff's counsel is prohibited from revealing the contents of the General Ledger to anyone, including Plaintiff, except for the Plaintiff's retained financial expert witness.

On May 28, 2010, Defendants filed a motion for the Court to alter its decision affirming the Magistrate Judge's order compelling production of the financial documents [134]. Defendants argued that Plaintiff could not recover punitive damages in this case because of a bankruptcy stipulation entered into by the parties over eight years ago.

On June 2, 2010, the Magistrate Judge entered an order [137] for Defendants to produce their general ledger in electronic form to Plaintiff within ten days, pursuant to the Court's affirmation of his earlier decision regarding Plaintiff's motion to compel. The Magistrate Judge further ordered that, upon completion of production, Defendants shall promptly file an itemization of costs and expenses associated with production. Defendants promptly filed a motion to alter or amend the Magistrate Judge's order on June 4, 2010, requesting that the order be stayed pending the Court's decision regarding Defendants' motion to alter or amend its order affirming the Magistrate Judge's order compelling production. Alternatively, Defendants requested that they be permitted to produce the ledger in paper format in four to six weeks. Finally, they requested that the Court order Plaintiff to deposit $30,000.00 into the Court's registry as a deposit on the expense associated with the production. On June 8, Defendants amended their motion, and requested that the Court order Plaintiff to deposit $292,296.07 into the Court's registry [138].

On June 14, 2010, the Magistrate Judge granted in part [145] Defendants' motion to alter or amend the order to produce the ledger, staying production of the general ledger pending a disposition on the Defendants' motion to alter or amend the Court's affirmation of the Magistrate Judge's order compelling production. However, the Court denied Defendants' request that they be

4

permitted to produce the ledger in paper format and that Plaintiff be ordered to deposit $292,296.07 into the Court's registry.

On July 9, 2010, the Court denied Defendants' motion to alter or amend its order affirming the Magistrate Judge's decision on the Motion to Compel [152, 153]. See Estate of Boles v. Nat'l Heritage Realty, Inc., 2010 U.S. Dist. LEXIS 68738 (N.D. Miss. July 9, 2010). The Court held that Rule 59(e) provided no relief for Defendants, insofar as they had offered no legitimate explanation for their failure to raise the bankruptcy stipulation before the Court issued its order affirming the Magistrate Judge's decision. The Court further held that Rule 60(b)(6) provided no relief for Defendants, as their piecemeal and untimely presentation of arguments related to the bankruptcy stipulation had prevented the parties and the Court from adequately addressing the issue.

On July 15, 2010, the Magistrate Judge lifted the stay previously entered and ordered the Defendants to produce the general ledger in electronic format to the Plaintiff within ten days [160]. The Magistrate Judge further ordered that once production was complete, Defendants were to promptly file a request for reimbursement of reasonable production costs, including an itemizaton of costs and expenses.

On July 20, 2010, Defendants filed another Motion to Alter or Amend [164], protesting the Magistrate Judge's order of July 15, 2010. Defendant argued that it was literally impossible for them to comply with the Magistrate Judge's July 15 order and still perform necessary redactions as required by the Agreed Protective Order of May 26, 2010. Defendants also alleged that it was not possible to both produce the ledgers as ordered on July 15 and to comply with confidential settlement agreements entered in other matters. Accordingly, Defendants requested that they be permitted to produce the general ledger as a hard copy, alleging that such format was necessary to

5

reduce the amount of time it would take to prepare the document for production, reduce the costs associated with production, and ensure the protection of the information contained therein. Defendants further requested that Plaintiff be ordered to reimburse them for the costs and fees incurred in the production of the portion of the general ledger for the year 2009 in the amount of $27, 593.19, and that Plaintiff be required to post a bond in the amount of $463,947.56 in anticipation of the costs of producing the portion of the general ledger for the years 2004 through 2008. Finally, Defendants requested that the timeline for production be altered so that they may produce the general ledger gradually over the next five months.

The final pretrial conference was held on Thursday, July 22, 2010 [167], and the Magistrate Judge denied Defendants' Motion to Alter or Amend [168] on Friday, July 23, 2010, ordering Defendants to produce the ledgers in an electronic format by Monday, July 26, 2010. Later that day, Defendants filed their objection to the Magistrate Judge's denial of their Motion to Alter or Amend [170]. On July 27, 2010, the Court addressed Defendants' objection [173, 174]. See Estate of Boles v. Nat'l Heritage Realty, Inc., 2010 U.S. Dist. LEXIS 75682 (N.D. Miss. July 27, 2010). The Court observed that over the course of this matter Defendants enjoyed multiple opportunities to present any evidence or argument relevant to the production of the general ledgers. The Court further noted that Defendants enjoyed an abundance of time in which to prepare the documents for production. Finally, the Court held that Defendants failed to offer any evidence that they were bound by any court order which prevented them from revealing information contained in the ledger, and that matters involving the payment of attorney fees are not generally privileged. The Court reiterated that it retained jurisdiction over the enforcement of the protective order entered on May 26, 2010, and that it was capable of addressing any potential violations thereof. Accordingly, the Court

ordered Defendants to produce the general ledgers in electronic format to Plaintiff by 5:00 p.m. on Monday, August 2, 2010.

On August 2, 2010, Plaintiff filed a Motion for Sanctions pursuant to Rule 37(b) [175], which included, as an exhibit, a letter from Defendants' counsel dated July 26, 2010 [175-1]. According to the letter, Defendants produced a disc which purportedly contained an electronic copy of their general ledger for the years 2004 through 2009 on July 26, 2010, via overnight delivery. Defendants advised Plaintiff that the information contained on the disc was encrypted and, therefore, 1) could only be viewed on a single computer; 2) could not be printed; 3) could not be e-mailed; and 4) would only be accessible until September 3, 2010. Defendants further advised that once the information was viewed, Defendants would receive notification that the license to view the information had been activated.

On August 3, 2010, the Court ordered Defendants to produce an unrestricted and complete electronic copy of their general ledgers for the years 2004 through 2009 to Plaintiff by 4:00 p.m. on Wednesday, August 4, 2010 [171]. Defendants subsequently filed an emergency motion for reconsideration [178]. On August 4, 2010, Defendants filed a Motion to Withdraw Defendants' Financial Condition and Net Worth as an Issue at Trial [179]. Later that day, Defendants' counsel contacted the chambers of the undersigned and requested a hearing to address the Motion for Reconsideration [178] and Motion to Withdraw [179]. The Court was unable to secure a court reporter for an expedited hearing and, therefore, set an expedited briefing schedule for the motions [181].

## II. MOTION FOR RECONSIDERATION

The Federal Rules of Civil Procedure do not specifically provide for a motion for

reconsideration, but the Fifth Circuit Court of Appeals has held that a district court may entertain such a motion and treat it as a motion to alter or amend under Rule 59(e) or as a motion for relief from judgment under Rule 60(b). Shepherd v. Int'l Paper Co., 372 F.3d 326, 328 n. 1 (5th Cir. 2004); Ellis v. Miss. Dep't of Health, 2009 U.S. Dist. LEXIS 11441, *2 (N.D. Miss. Feb. 5, 2009), affirmed, 344 F. App'x 43 (5th Cir. 2009); Williamson Pounders Architects, P.C. v. Tunica County, 2008 U.S. Dist. LEXIS 55145, *2 (N.D. Miss. July 21, 2008), affirmed, 2010 U.S. App. LEXIS 2738, *2 (5th Cir. Feb. 9, 2010). "If the motion for reconsideration is filed and served within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion." Shepherd, 372 F.3d at 328 n.1.

This Court entered the order to produce an unrestricted electronic copy of the general ledgers on August 2, 2010. Defendants filed their motion to reconsider on the same day. Accordingly, the Court will apply the standard applicable to motions under Rule 59(e).

Federal Rule of Civil Procedure 59(e) grants the Court the power to alter or amend its judgment. FED. R. CIV. P. 59(e). Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence and is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Knight v. Kellogg Brown & Root Inc., 333 F. App'x 1, 8 (5th Cir. 2009) (citing Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004)) (punctuation omitted); see also Nationalist Movement v. Town of Jena, 321 F. App'x 359, 364 (5th Cir. 2009) ("Motions for reconsideration should not be used to raise arguments that could have been made before the entry of judgment or to re-urge matters that have already been advanced by a party.") (citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473-74 (5th Cir. 1989)).

8

The federal courts of this state recognize three potential grounds for the Court to alter or amend a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." Williamson Pounders Architects, P.C., 2008 U.S. Dist. LEXIS 87680 at *4; see also Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990). This Court has considerable discretion in deciding whether to grant a motion for reconsideration. Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993). Granting a motion for reconsideration, however, is "an extraordinary remedy and should be used sparingly." In re Pequeno, 240 F. App'x 634, 636 (5th Cir. 2007) (citations omitted).

Defendants have not argued any intervening change in controlling law or presented any new evidence previously unavailable. Therefore, the Court construes their motion as one brought to correct a clear error of law or prevent manifest injustice. However, a Rule 59(e) motion premised upon such grounds "should not be used . . . to re-urge matters that have already been advanced by a party." Nationalist Movement, 321 F. App'x at 364. Indeed, "the Court cautions that any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." Id.

Defendants argue that they have been denied the procedural safeguards of Rule 34 of the Federal Rules of Civil Procedure. Rule 34 permits a party to serve on any other party a request within the scope of Rule 26(b) to produce "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." FED. R. CIV. P.

34(a)(1)(A). The request for production: "(A) must describe with reasonable particularity each item or category of item to be inspected; (B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and (C) may specify the form or forms in which electronically stored information is to be produced." FED. R. CIV. P. 34(b)(1).

"The party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated under Rule 29 or be ordered by the court." FED. R. CIV. P. 34(b)(2)(A). "The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form - or if no form was specified in the request - the party must state the form or forms it intends to use." FED. R. CIV. P. 34(b)(2)(D). Finally, the rule provides:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

FED. R. CIV. P. 34(b)(2)(E).

Defendants argue that they have been denied the opportunity to object to the form of production. Plaintiff served its requests for production on November 19, 2009 [46]. Plaintiff's

10

request did not specify a specific form in which the general ledgers were to be produced [64-2].[5] Defendants objected to the request, stating that the information sought was confidential, that the information sought exceeded the permissible scope of discovery, and that production would be unduly burdensome [64-3]. Therefore, Plaintiff's request did not specify the form for producing the electronically stored information at issue - the general ledgers - and Defendants objected to the request on the basis of factors other than form. Rule 34(b)(2)(D) places the burden on the responding party to "state the form or forms it intends to use." FED. R. CIV. P. 34(b)(2)(D). Defendants failed to specify an particular form in their response, and, furthermore, they failed to even raise Rule 34 until this late hour.

On March 23, 2010, Defendants made no argument regarding the form of production during the hearing before the Magistrate Judge on the motion to compel [114]. Defendants only argued that the general ledgers were irrelevant and that production would be overly burdensome and unduly prejudicial. On April 8, 2010, Defendants made no argument regarding the form of production when they objected to the Magistrate Judge's decision on the motion to compel [97]. Rather, Defendants raised the same arguments of relevance, burden, and prejudice.

On June 4, 2010, Defendants first presented an argument concerning the form of production in their motion to alter or amend the Magistrate Judge's order following the Court's affirmation of the Magistrate Judge's decision on the Motion to Compel [138]. Defendants essentially made two arguments: 1) production in hard copy form is less time consuming and, therefore, less costly; and 2) production in hard copy form is necessary to ensure the protection of Defendants' confidential

---

[5]In compliance with Local Rule 5(c)(3), the parties did not file their discovery requests and responses. However, Plaintiff attached copies of its requests for production and Defendants' responses thereto as exhibits to the motion to compel filed on February 9, 2010 [64].

information.  Defendants repeated these arguments in their motion to alter or amend filed on July 20, 2010 [164], in their objection the Magistrate Judge's order filed on July 23, 2010 [170], and in the present motion for reconsideration [178].

"[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."  In re United States, 864 F.2d 1153, 1156 (5th Cir. 1989); see also Humana Ins. Co. v. State Farm Mut. Auto. Ins. Co., 2010 U.S. Dist. LEXIS 63734, *2 n. 4 (M.D. La. June 25, 2010); Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C., 258 F.R.D. 149, 153 (S.D. Tex. Mar. 19, 2009); Dejoie v. Std. Fire Ins. Co., 2009 U.S. Dist. LEXIS 101792, *2 (E.D. La. Oct. 19, 2009); Jones v. Tex. Youth Comm'n, 2007 U.S. Dist. LEXIS 88943, *3 (E.D. Tex. Dec. 3, 2007); Godsey v. United States, 133 F.R.D. 111, 113 (S.D. Miss. 1990).  Further, Rule 34 requires that a response to a request for production - including objections - must be served within thirty days of service of the request.  FED. R. CIV. P. 34(b)(2)(A).

Defendants knew that the information sought by Plaintiff was stored electronically long before they ever raised the issue of form.  Defendants failed to raise the issue of form when they initially objected to the request for production.  They failed to raise it before the Magistrate Judge when he considered their motion to compel, and they failed to raise it before the undersigned when they objected to the Magistrate Judge's decision on the motion to compel.  Defendants first raised the issue of form on June 4, 2010 - over six months after the requests for production were served, and less than three months away from trial.  Furthermore, Defendants failed to raise *any* Rule 34 argument until the present motion, and the trial of this matter begins in less than three weeks.  Accordingly, the Court holds that Defendants have had ample opportunity to raise the issue of form and have, in fact, done so in their motion to alter or amend of June 4, 2010 [138]; in their motion

to alter or amend of July 20, 2010 [164]; and in their objection to the Magistrate Judge's order of July 23, 2010 [170]. The Court has considered Defendants' argument and has rejected it. Furthermore, Defendants have not shown good cause for their failure to timely raise any argument premised upon Rule 34 and, therefore, have waived their right to raise such an argument.

The Court further notes that Rule 34 requires that a party responding to a request for production of electronically stored information that does not specify the form produce the information in "a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." FED. R. CIV. P. 34(b)(2)(E)(ii). The record indicates that the information was not produced in the form in which it is ordinarily maintained, as evidenced by the affidavit from Gerald Coker [178-1] in which he testified that the information had to be placed on a compact disc in "a portable format, like PDF." Further, the record indicates that the information was not produced in a "reasonably usable form," in that Plaintiff can not view the information on more than one computer or even print it out. Therefore, even if Defendants had not waived any Rule 34 argument, it does not appear likely that such an argument would result in Defendants' desired outcome.

Defendants also cite In re Ford Motor Co., 345 F.3d 1315 (11th Cir. 2003), in support of their motion to reconsider. In that products liability case, a plaintiff filed a motion to compel seeking direct access to databases held by Ford to conduct searches for claims related to seatbelt buckles. Id. at 1316. The databases in question included records of all Ford contact with customers, dealers, personnel, and other sources. Id. Within less than two weeks of the filing of the motion to compel, the district court granted the motion, without allowing a hearing or response. Id. Ford filed a motion for reconsideration, and, after briefing and a hearing, the Court ordered Ford to allow the plaintiff direct access to the databases. Id. Defendants filed a special writ of mandamus for review

of the district court's discovery ruling. Id.

The Eleventh Circuit granted Ford's writ of mandamus and vacated the district court's discovery order. Id. at 1317. The appellate court noted that the district court had failed to make any "findings - express or implied - that Ford had failed to comply properly with discovery requests." Id. Further, the court noted that the district court did not address Ford's objections or provide any substantive explanation for its ruling. Id. Finally, the court noted that the district court granted the plaintiff unlimited, direct access to Ford's databases, and, while direct access was permissible in some cases, this was not one of them. Id. The court specifically noted that the plaintiff was "unentitled to this kind of discovery without - at the outset - a factual finding of some non-compliance with discovery rules by [defendant.]" Id. Accordingly, the court held that the district court had abused its discretion. Id.

The present case is distinguishable from Ford. First, the Ford parties agreed that the information sought by the plaintiff was discoverable, but they disagreed as to whether the plaintiff should have direct access to Ford's databases. Id. at 1316. The databases at issue contained a large amount of information that was not discoverable or relevant. Id. at 1316-17. In the present case, *all* of the information contained in the general ledgers is relevant, as it is all relevant to Defendants' financial condition. Plaintiff does not seek access to a large amount of undiscoverable, irrelevant information like the Ford plaintiff sought.

Additionally, the district court in Ford failed to provide any reason whatsoever for its decisions and failed to address the defendant's objections. In the present case, the Court has already provided three separate memorandum opinions in support of its decisions related to the production of the general ledgers [130, 153, 174]. Further, the Court has addressed each of Defendants'

objections. Defendants have not been the recipients of the sort of unexplained, dismissive rulings described in the Ford case. Rather, Defendants merely disagree with the Court. Indeed, the protracted nature of the present discovery dispute is - by itself - evidence that it is fundamentally different than the one described in the Ford case. Whereas the Ford case involved only one layer of briefing and a hearing before the matter was resolved by an appellate court, the present discovery dispute has been ongoing for at least the past six months, with multiple rounds of briefing, at least one hearing on the record before the Magistrate Judge, and at least one off-the-record teleconference with the Magistrate Judge. In short, the Court has given Defendants ample opportunity to object and has given each and every argument posed by Defendants its due consideration.[6]

The Court declines to consider any argument premised upon Defendants' confidentiality concerns, as the Court has repeatedly addressed such arguments in prior rulings. See Knight, 333 F. App'x at 8; Nationalist Movement, 321 F. App'x at 364. The Court further declines to consider Defendants' sophistic argument that they "fully complied" with the Magistrate Judge's order insofar as it did not forbid the restrictions.

### III. MOTION TO WITHDRAW

Defendants seek to waive the statutory caps on punitive damages contained in Mississippi

---

[6]Defendants characterize the Court's August 3, 2010, *sua sponte* order to produce an unrestricted complete copy of the general ledgers as evidence of the Court's lack of consideration for Defendants' concerns. This matter is two and a half weeks away from trial. Neither party has sought a continuance. The Court has ruled that the general ledgers are relevant and discoverable. If Plaintiffs are to acquire the ledgers, submit them to an expert for review, provide Defendants with an expert's report, and prepare evidence in the event that punitive damages is an issue at trial, this matter must be resolved quickly. To whatever extent the Court has circumvented the typical briefing schedules embraced by the Local Rules during this extremely late stage of this discovery dispute, it has been forced to do so by Defendants' intentional delay.

Code Section 11-1-65, and, therefore, Defendants argue that their financial condition and net worth are irrelevant to the issues to be presented at the trial of this matter. Defendants have not cited any law in support of the notion that a party may waive Mississippi's statutory caps on punitive damages. However, it is unnecessary for the Court to address that issue, as Defendants' financial condition and net worth would be relevant even if they were permitted to waive the statutory caps.

Defendants refer to Mississippi Code Section 11-1-65(3)(a), which imposes caps on the amount of punitive damages that may be assessed based on the net worth of the defendant. The limitations imposed by the caps are not to be disclosed to the jury, however. MISS. CODE ANN. § 11-1-65(3)(c). However, as the Court noted in a prior decision, multiple provisions of the punitive damages statute require consideration of Defendants' financial condition and net worth in the event that the Court allows the question of punitive damages to be posed to the jury. See Estate of Boles, 2010 U.S. Dist. LEXIS 51604 at *8. Most pertinent to the present motion, the statute requires that "the fact finder, in determining the amount of punitive damages, shall consider, to the extent relevant, the following: the defendants's financial condition and net worth...." MISS. CODE ANN. § 11-1-65(1)(e).

Defendant argues that the waiver of the statutory caps on punitive damages renders the issue of financial condition irrelevant to the jury's consideration of punitive damages and, therefore, outside the factors to be considered by a jury in determining an award of punitive damages. However, the section of the punitive damages statute establishing the caps explicitly provides that the limitations imposed therein "shall not be disclosed to the trier of fact." MISS. CODE ANN. § 11-1-65(3)(c). Therefore, as the caps on punitive damages are *never* to be disclosed to a jury, waiver of the caps would have no impact on the relevance of financial condition to the jury's decision

16

regarding punitive damages. Further, even if the Court permitted Defendants to waive the caps on punitive damages, the Court would still be required to consider Defendants' financial condition and net worth when assessing any punitive damages award. Miss. Code Ann. § 11-1-65(1)(f)(ii)(3). Therefore, the relevance of Defendants' financial condition stems not only from the statutory caps, but also from other potentially applicable portions of the punitive damages statute. Accordingly, even if Defendants were permitted to waive the statutory caps - a question which the Court declines to answer - the general ledgers would still be relevant. Defendants' Motion to Withdraw [179] is denied.

## IV. CONCLUSION

The Court has the "inherent power to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants." United States v. Colomb, 419 F.3d 292, 299 (5th Cir. 2005) (citing Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). Indeed, the Court has a duty to manage its docket "to achieve the orderly and expeditious disposition of cases." Id. (quoting Woodson v. Surgitek, Inc., 57 F.3d 1406, 1417 (5th Cir. 1995)). The Court also possesses "broad discretion in discovery matters." Bisby v. Garza, 342 Fed. Appx. 969, 973 (5th Cir. 2009) (citing Scott v. Monsanto Co., 868 F.2d 786, 793 (5th Cir. 1989)); see also Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982). The Court exercises that discretion to achieve a just and efficient resolution to the matters before it.

When a party intentionally delays compliance with the Court's discovery orders and offers the same arguments repeatedly in opposition to production, it potentially impedes the Court's ability to manage the case, the Court's ability to make evidentiary decisions at trial, and the jury's ability to make informed decisions. The Court will not allow Defendants to derail the trial of this matter

17

at such a late juncture, particularly in light of the fact that Defendants created the present situation by delaying cooperation in discovery and engaging in an incessant campaign to avoid compliance with the Court's orders.

**The Court denies Defendants' Emergency Motion for Reconsideration [178], denies Defendants' Motion to Withdraw [179], and orders Defendants to produce an unrestricted and complete electronic copy of their general ledgers for the years 2004 through 2009 to Plaintiff by 5:00 p.m., Central Standard Time, on Saturday, August 7, 2010.** By use of the term "unrestricted," the Court means: 1) Defendants shall produce a complete electronic copy of the general ledgers that may be viewed on more than one computer; 2) Defendants shall produce a complete electronic copy of the general ledgers that may be printed; 3) Defendants shall produce a complete electronic copy of the general ledgers that may be e-mailed or otherwise electronically or digitally transferred; 4) Defendants shall produce a complete electronic copy of the general ledgers which is not restricted to access within any specific period of time; and 5) Defendants shall produce a fully accessible, unencrypted, complete electronic copy of the general ledgers. Nothing in this order shall be construed as contradicting any of the Court's previous orders which remain in effect.

Once Defendants have fully complied with this order and produced an unrestricted and complete electronic copy to Plaintiff, they shall immediately provide notice to the Court, on the record, that they have done so. If Defendants do not fully comply with this order, Plaintiff shall immediately provide notice to the Court, on the record, that Defendants have not complied, including a factual account of the manner in which Defendants have not complied.

So ordered on this, the 6th day of August, 2010.

/s/ Sharion Aycock  
**UNITED STATES DISTRICT JUDGE**