IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THE ESTATE OF EVA BOLES by and through
Eliza Price, Administratrix of the Estate of Eva Boles,
for the use and benefit of the Estate and wrongful death
beneficiaries of Eva Boles                                                                                   PLAINTIFF

V.                                                                       CIVIL ACTION NO. 4:07-CV-99-SA-DAS

NATIONAL HERITAGE REALTY, INC., et al.                                           DEFENDANTS

## ORDER

Presently before the Court are three motions in limine filed by Defendants [154, 155, 158]. For the reasons stated below, the Court 1) grants Defendants' motion in limine as to evidence related to other residents [154], with the understanding that the Court may revisit the issue at trial if Plaintiff can present sufficient evidence of a routine business practice; 2) denies Defendants' motion in limine as to evidence related to staffing levels [155], with the understanding that Defendants may raise more specific objections at trial; and 3) grants Defendants' motion in limine as to surveys conducted by the Mississippi Department of Health [158] insofar as such surveys do not pertain specifically to Eva Boles.

## I. EVIDENCE RELATED TO OTHER RESIDENTS

Defendants' first motion in limine seeks the exclusion of any evidence related to the care and/or treatment of residents of the Greenwood Health and Rehabilitation Center other than Eva Boles. Defendants argue that such evidence is irrelevant, pursuant to Federal Rules of Evidence 401 and 402. Plaintiff responds that evidence of substandard care provided to other residents is circumstantial evidence of substandard care provided to Boles. Plaintiff further responds that evidence regarding the treatment of other residents is admissible under Rule 406 of the Federal

Rules of Civil Procedure.

In Mariner Health Care v. Estate of Edwards, 964 So. 2d 1138 (Miss. 2007), the Mississippi Supreme Court examined several evidentiary issues in a nursing home negligence case. The defendants in that case argued that evidence of their corporate practices, evidence of patterns of care unrelated to the plaintiff, and errors in nursing home documentation that had no effect on the plaintiff should have been excluded from the liability phase of the trial. Id. at 1148. The plaintiff argued on appeal that evidence regarding the defendant's general corporate policies was necessary to demonstrate that the defendant's budgeting policies caused the decedent's death. Id. at 1149. The court observed that the plaintiff submitted no evidence drawing a causal connection between the defendant's policies and the decedent's injuries. Id. While evidence regarding general company policies "would certainly have been relevant at the punitive phase to establish whether [the decedent's] treatment was an aberration or consistent with company practice," it was "not probative to the issues of duty, breach, causation, or injury." Id.

Although Defendants' motion in limine is directed at evidence regarding the care of other residents, the Court finds the above analysis of general company practices to be applicable. Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." FED. R. EVID. 404(b). "The reason for the rule is that such character evidence is of slight probative value and tends to distract the trier of fact from the main question of what actually happened on a particular occasion." Jones v. S. Pacific R. R., 962 F.2d 447, 449 (5th Cir. 1992). Evidence of the care given to other residents is of little probative value to the issues to be decided during the liability phase of trial - Defendants' duty, breach, causation, and damage specific to Boles. "Evidence of a similar act of

2

negligence is not admissible to prove negligence in the performance of the same act later." Am. Airlines, Inc. v. United States, 418 F.2d 180, 197 (5th Cir. 1969).

However, Plaintiff argues that evidence of the care given to other residents should be admitted under Federal Rule of Evidence 406. Rule 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

FED. R. EVID. 406. "[E]vidence of a routine practice is highly probative, and persuasive." Mobil Exporation & Producing U.S. v. Cajun Constr. Servs., 45 F.3d 96, 99 (5th Cir. 1995). "It is particularly persuasive in the business context because the need for regularity in business and the organizational sanctions which may exist when employees deviate from the established procedures give extra guarantees that the questioned activity followed the usual custom." Id. (quotation omitted). However, "[e]vidence of habit is not lightly established." Jones, 962 F.2d at 449. "To obtain a Rule 406 inference of the routine practice of a business, a plaintiff must show a sufficient number of specific instances of conduct to support that inference." Mobil, 45 F.3d at 99. "Evidence of the defendant's actions on only a few occasions or only in relation to the plaintiff are not enough; the plaintiff must show regularity over substantially all occasions or with substantially all parties with whom the defendant has had similar business transactions." Id. at 99-100.

Plaintiff has not presented the Court with sufficient evidence to establish that Defendants had a regular business practice with respect to the care of substantially all residents of Greenwood Health and Rehabilitation Center. Therefore, the Court finds that Plaintiff has not met the high bar for establishing evidence of a routine business practice. Accordingly, the Court grants Defendants' motion in limine as to evidence regarding other patients during the liability phase of the trial, with

3

the caveat that it will allow Plaintiff to present evidence regarding other patients outside the presence of the jury. If the Court finds that Plaintiff has sufficient evidence to establish a routine business practice, it will consider allowing the evidence to be presented to the jury.

This ruling has no bearing on a potential punitive damages phase at trial, as evidence regarding other patients would be probative of whether the treatment of Boles "was an aberration or consistent with company practice." Edwards, 964 So. 2d at 1149.

## II. EVIDENCE REGARDING STAFFING LEVELS

Defendants argue that the Court should exclude any testimony regarding staffing levels at Greenwood Health and Rehabilitation Center (GHRC). Defendants argue that evidence regarding the staffing levels at GHRC is a matter upon which only an expert witness may offer an opinion. Plaintiffs have designated two expert witnesses, and neither has indicated an intent to offer an opinion regarding staffing levels at GHRC. However, Plaintiffs have represented that former and current employees of Defendants will testify that GHRC was understaffed. Defendants argue that this testimony should not be admitted, insofar as these witnesses were not designated as experts.

The Mississippi Supreme Court has held, "[G]eneralized testimony of short-staffing that does not show a causal nexus between staffing and a plaintiff's injuries is not probative to the question of liability." Edwards, 964 So. 2d at 1150 (Miss. 2007); see also Estate of Finley v. Beverly Health and Rehabilitation Services, Inc., 933 So. 2d 1026, 1035-38 (Miss. Ct. App. 2006). However, evidence that a nursing home resident "received substandard care as a result of shortages in staffing" is probative of liability. Edwards, 964 So. 2d at 1150. In the Edwards case, the Mississippi Supreme Court noted that several nursing assistants "testified that understaffing prevented them from turning Edwards as often as was necessary to prevent bedsores." Id. "One nursing assistant

4

testified that she was not able to change Edwards as often as she should have because of short-staffing." Id. The Court contrasted this testimony with the Finley case, in which "none of the nursing assistants 'could recall any specific instance where [the resident] received substandard care as a result of shortages in staffing or lack of supplies." Id. (quoting Finley, 933 So. 2d at 1036).

Federal Rule of Evidence 701 governs the admissibility of opinion testimony from lay witnesses. It provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701. While lay testimony "results from a process of reasoning familiar in everyday life," expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." United States v. Sosa, 513 F.3d 194, 200 (5th Cir. 2008). "[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life." Id.

Defendant argues that testimony as to whether a nursing home resident's needs have been met and whether there were sufficient staff to meet those needs is specialized knowledge - "outside the reasoning processes familiar to the average person in every day life." Id. Testimony of the sort described in the Edwards case - in which a nurse testifies that she was unable to provide the proper care for a patient because there were insufficient staff on duty - is not based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Rather, it is an opinion based on "common sense or . . . past experience formed from firsthand observation," admissible as a lay opinion under Rule 701. Sosa, 513 F.3d at 200. For that reason, the Court can not grant a broad motion in limine as to all evidence regarding staffing levels at GHRC. However,

5

Defendants are free to make more specific objections at trial, and the Court will consider them on a case-by-case basis.

## III. EVIDENCE REGARDING SURVEYS

Defendants anticipate that Plaintiff will seek the admission of surveys conducted by the Mississippi State Department of Health. Defendants allege that state agents conduct inspections of nursing homes approximately every twelve to fifteen months, to certify compliance with state and federal regulations. Defendants object to the admission of such surveys for a variety of reasons, but it is unnecessary for the Court to address each of Defendants' arguments.

In <u>Estate of Hazelton v. Cain</u>, 950 So. 2d 231 (Miss. Ct. App. 2007), the Mississippi Court of Appeals affirmed a trial court's grant of summary judgment in favor of the president and former administrator of a nursing home. In that case, the plaintiff - the estate of a deceased former resident of the nursing home - relied on Mississippi Department of Health surveys to show that the defendants should have been aware of the alleged deficiencies in the decedent's care. <u>Id.</u> at 237. The plaintiff also argued that the existence of the surveys created a sufficient issue of material fact as to the defendants' neglect. <u>Id.</u>

However, the Court of Appeals noted that the reports at issue did not establish 1) "a causal connection between [the individual defendants] and [the decedent's] personal care;" 2) that the individual defendants "negligently handled their duties;" or 3) "that any perceived problems were not readily corrected by the nursing home." <u>Id.</u> The court further noted that there was no evidence linking the surveys to the plaintiff. <u>Id.</u> One of them "was conducted almost a year before [the decedent] even became a resident of" the nursing home, and the second one did not specifically address the decedent's care. <u>Id.</u> Therefore, the Court of Appeals held that the evidence presented

before the lower court was insufficient to create a general issue of material fact as to whether the defendants breached any duty to the decedent. Id.

Plaintiff has not identified any survey with information specific to Eva Boles. Rather, Plaintiff argues that introduction of the surveys is necessary to demonstrate that Defendants fostered a facility-wide atmosphere and environment of neglect and abuse. Plaintiff argues that the surveys are evidence that Defendants were on notice of the conditions at the facility and that the Defendants' acts and omissions were not inadvertent mistakes or accidents. As demonstrated by the above-cited case, such evidence is not probative of Defendants' alleged negligence in the care of Eva Boles. See also Edwards, 964 So. 2d at 1150 (generalized testimony regarding negligence at the facility was not probative toward allegations regarding specific plaintiff). Therefore, the Court grants Defendants' motion in limine regarding the Department of Health surveys insofar as such surveys do not pertain specifically to Eva Boles. This ruling is only applicable to the liability phase of trial and has no bearing on a potential punitive damages phase.

## IV. CONCLUSION

For the reasons stated above, the Court: 1) grants Defendants' motion in limine as to evidence related to other residents [154], with the understanding that the Court may revisit the issue at trial if Plaintiff can present sufficient evidence of a routine business practice; 2) denies Defendants' motion in limine as to evidence related to staffing levels [155], with the understanding that Defendants may raise more specific objections at trial; and 3) grants Defendants' motion in limine as to surveys conducted by the Mississippi Department of Health [158] insofar as such surveys do not pertain specifically to Eva Boles.

So ordered on this the 13th day of August, 2010.

7

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**